UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH RAY THOMAS,

       Petitioner,                                Civil Action No. 14-CV-12086

v.                                     HON. BERNARD A. FRIEDMAN

THOMAS WINN,

       Respondent.
_____/

## OPINION AND ORDER DENYING PETITIONER'S APPLICATION FOR A WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner, presently confined at the Gus Harrison Correctional Facility in Adrian, Michigan, has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his conviction for first-degree premeditated murder, Mich. Comp. Laws § 750.316. For the reasons stated below, the Court shall deny the application.

### I. Background

Petitioner was convicted on September 10, 2009, following a jury trial in Kent County Circuit Court. The Michigan Court of Appeals summarized the facts as follows:

> Debra Jean VanKlaveren, the victim, was found dead on January 5, 2009, in her apartment. Asphyxia by manual strangulation was determined to be the cause of death. Billie Jo Lowry talked to VanKlaveren about rent money on January 2, 2009, outside VanKlaveren's apartment. VanKlaveren advised Lowry that she did not have the rent money that day. Lowry returned on Monday, January 5, 2009, but received no response when she knocked on VanKlaveren's door. Lowry then got permission from her supervisor and entered VanKlaveren's locked apartment using her own keys. From across the apartment, Lowry saw a person on the bed in the bedroom. Upon realizing that the person on the bed was VanKlaveren, Lowry left the apartment and contacted the police.

Thomas was staying with VanKlaveren in December 2008 and early January 2009. VanKlaveren's neighbor, David Badger, testified that he saw Thomas leave VanKlaveren's apartment on Saturday night, January 3, 2009. Badger observed Thomas lock VanKlaveren's apartment door and then drive away in VanKlaveren's car.

On January 5, 2009, Thomas telephoned his brother for a ride. When Thomas got in his brother's car, he was high on crack cocaine and was speaking rapidly about numerous topics. Thomas told his brother, "I might have choked someone." His brother was upset and brought Thomas to their sister's home. Thomas then told his brother, his sister, and his brother-in-law that he did choke someone, that the person he choked still had a pulse, and that she was on a bed. Thomas demonstrated to them how he choked his victim, by placing both thumbs and fingers together with a circle in the center.

After his arrest, Thomas also allegedly confessed to his cellmate while incarcerated. Thomas told Christopher Eugene Cummings that he was smoking crack cocaine with VanKlaveren. She started pointing and telling him to look under the furniture for some crack cocaine that may have dropped. Cummings testified that Thomas said he then pushed VanKlaveren's hand away, punched her in the face, and choked her. Cummings testified that Thomas said "Deb" was the person he choked. Thomas said he left the apartment after he choked her, but that he later came back to take money from VanKlaveren and to take her dog so that no one would hear it barking. Thomas said that he moved VanKlaveren to the bed so it would look like she was asleep.

*People v. Thomas*, No. 294789, 2011 WL 192384, at *1 (Mich. Ct. App. Jan. 20, 2011).

Petitioner's conviction was affirmed on appeal. *Id.; lv. den.* 490 Mich. 878, 803 N.W.2d 690 (2011).  On September 27, 2012, petitioner filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, et seq., which was denied by the trial court. *People v. Thomas*, No. 09-02487-FC (Kent Cty. Cir. Ct., Oct. 9, 2012).  The Michigan appellate courts denied petitioner leave to appeal. *People v. Thomas*, No. 313330 (Mich. Ct. App.); *lv. den.* 495 Mich. 949, 843 N.W.2d 524 (2014).  On May 19, 2014, petitioner filed the instant application for a writ of habeas corpus seeking relief on the following grounds:

1. Whether the Court of Appeals should have decided that the Appellant's conviction of first-degree premeditated murder is erroneous and should be set aside because: A. The proofs presented at trial are insufficient to establish that the Appellant caused the decedent's death; and/or B. the trial court erroneously denied the defendant's motion for directed verdict regarding premeditation?

2. The Court of Appeals should have decided that the Appellant's right to present a defense under the Michigan and Federal Constitutions was denied by the trial court's evidentiary rulings.

3. The Court of Appeals should have decided that the totality of the trial court proceedings denied the Appellant his rights under the Michigan and Federal Constitutions to a fair trial.

4. The Court of Appeals should have decided that the Appellant's federal and state constitutional rights to effective assistance of counsel were violated in this case.

5. Trial counsel rendered incompetent advice during the plea bargaining process, which denied Mr. Kenneth Ray Thomas the effective assistance of counsel.

6. Whether Mr. Thomas is entitled to avail himself of a plea offer to a reduced charge that included a sentence agreement of 25 years, which he turned down based on legally erroneous advice from his trial counsel, in violation of the recent United States Supreme Court case *Lafler v Cooper*, 566 U.S. ___; 132 S. Ct. 1376; 182 L Ed 2d 398 (2012).

## II.  Standard of Review

The following standard applies in federal habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

3

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21; *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333 n.7).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). The Court emphasized "that even a strong case for relief does not mean the state court's contrary

conclusion was unreasonable." *Id.* Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits." *Harrington*, 131 S. Ct. at 785 (internal quotation marks omitted). Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).

Further, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th

Cir. 1998).

### III.  Discussion

#### A.  Claim 1:  The Insufficient Evidence Claim

Petitioner first argues that the Michigan Court of Appeals erroneously found that there was sufficient evidence to support a finding that he caused the death of Debra Jean VanKlaveren.  Petitioner also argues that the trial judge erroneously denied his motion for a directed verdict regarding the element of premeditation.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970).  On habeas review, this issue is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  Specifically, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original).

Petitioner contends that the prosecution failed to prove the cause of death beyond a reasonable doubt.  He challenges the evidence supporting that VanKlaveren died of strangulation and argues that it supports a conclusion that she died of a cocaine overdose.  The Michigan Court of Appeals rejected petitioner's argument for the following reasons:

> Thomas challenges the evidence establishing that VanKlaveren died of strangulation and argues that the evidence supports a conclusion that she died of a cocaine overdose. This argument has no merit. The forensic pathologist who performed the autopsy determined that the cause of death was manual strangulation. The pathologist based his conclusion on the facts that VanKlaveren had bruising on her neck and that the decomposition around her head and neck suggested a large amount of blood was trapped in the area, which is consistent

6

with strangulation. Additionally, VanKlaveren's hyoid bone, a small bone in the neck that is likely to break during manual strangulation, was broken. Finally, the pathologist recognized that although there was a significant level of cocaine in VanKlaveren's system, he found no indication of a cocaine-induced heart attack or any other natural cause of death.

*Thomas*, 2011 WL 192384, at *2.

"In Michigan, the prosecution does not need to prove that the defendant's conduct was 'the' proximate cause of death, but only 'a' proximate cause of death." *Holloway v. Jones*, 166 F. Supp. 2d 1185, 1193 (E.D. Mich. 2001), citing *People v. Tims*, 449 Mich. 83, 95–96, 534 N.W.2d 675 (1995). Further, "a prosecutor need not prove with absolute certainty that a particular incident caused the victim's death; a medical likelihood suffices." *People v. Stiller*, 242 Mich. App. 38, 52, 617 N.W.2d 697, 704 (2000). In the present case, the pathologist's testimony that the victim died from manual strangulation was sufficient to prove the cause of death.

Petitioner also argues that the forensic evidence was insufficient to link him to the crime and that no physical evidence was found on the crime scene implicating him in the murder. "The identity of a defendant as the perpetrator of the crimes charged is an element of the offense and must be proved beyond a reasonable doubt." *Byrd v. Tessmer*, 82 F. App'x 147, 150 (6th Cir. 2003), citing *People v. Turrell*, 25 Mich. App. 646, 181 N.W.2d 655, 656 (1970).

The Michigan Court of Appeals found sufficient evidence to establish petitioner's identity as the perpetrator of the murder because "Thomas confessed to multiple people, was seen leaving VanKlaveren's apartment on the night later determined to be close to the time of the murder, and was later driving VanKlaveren's car." *Thomas*, 2011 WL 192384, at *3. "[A]n admission by the accused identifying himself as the person involved in the (crime) is sufficient to sustain a guilty verdict when the crime itself is shown by independent evidence." *United States v. Opdahl*, 610 F.2d

490, 494 (8th Cir. 1979). *Accord Sok v. Romanowski,* 619 F. Supp. 2d 334, 351 (W.D. Mich. 2008). Petitioner's admission of guilt was sufficient evidence to establish his guilt as the murderer.

Petitioner further argues that the trial court judge erroneously denied his motion for a directed verdict regarding premeditation. The Michigan Court of Appeals rejected petitioner's argument as follows:

> "Circumstantial evidence and reasonable inferences drawn from the evidence may constitute satisfactory proof of premeditation and deliberation." Evidence of manual strangulation can be used as evidence that the defendant had an opportunity to take a "second look." According to Thomas's own confession, he first punched VanKlaveren and then strangled her; thus, the time it took for Thomas to punch and strangle VanKlaveren afforded him opportunity to take a second look. Additionally, Thomas's attempt to conceal the killing is also relevant evidence of premeditation. The evidence and reasonable inferences supported that Thomas placed VanKlaveren on the bed to look like she was sleeping, he took VanKlaveren's dog so no one would be alerted of a problem because of barking, and he locked VanKlaveren's apartment door. Thomas also stole money from VanKlaveren and took her car after killing her, leading to a reasonable inference suggesting that Thomas planned the murder in order to obtain money and the car. In sum, we conclude that the trial court properly denied the directed verdict because there was sufficient evidence, viewed in a light most favorable to the prosecution, for a rational jury to find Thomas guilty beyond a reasonable doubt of first-degree premeditated murder.

*Thomas,* 2011 WL 192384, at *2 (footnotes omitted).

> To constitute first degree murder in Michigan, the state must establish that a defendant's intentional killing of another was deliberated and premeditated. The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. Premeditation may be established through evidence of the following factors:
>
> 1. the prior relationship of the parties;
> 2. the defendant's actions before the killing;
> 3. the circumstances of the killing itself;
> 4. the defendant's conduct after the homicide.

8

*Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001) (citations omitted).  Although the minimum time required under Michigan law to premeditate "is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look.'" *See Williams v. Jones,* 231 F. Supp. 2d 586, 594-95 (E.D. Mich. 2002), quoting *People v. Vail,* 393 Mich. 460, 469; 227 N.W.2d 535 (1975).  "A few seconds between the antagonistic action between the defendant and the victim and the defendant's decision to murder the victim may be sufficient to create a jury question on the issue of premeditation." *Alder v. Burt,* 240 F. Supp. 2d 651, 663 (E.D. Mich. 2003).  "[A]n opportunity for a second look may occur in a matter of seconds, minutes, or hours, depending upon the totality of the circumstances surrounding the killing." *Johnson,* 159 F. Supp. 2d at 596. Premeditation and deliberation may be inferred from circumstantial evidence, including the type of weapon used and the location of the wounds inflicted.  *See People v. Berry*, 198 Mich. App. 123, 128; 497 N.W.2d 202 (1993).

In the present case, the evidence presented at trial was sufficient to support a finding of first-degree premeditated murder.  Petitioner first punched the victim before strangling her. Manual strangulation can be evidence that a defendant had an opportunity to take a "second look," so as to support a finding of premeditation. *See People v. Gonzalez*, 468 Mich. 636, 641, 664 N.W.2d 159 (2003).  Petitioner's attempts to conceal the murder also support an inference of premeditation.  *Id.*   Petitioner's first claim is without merit.

**B.  Claim 2:  The Right to Present a Defense Claim**

Petitioner next argues that the Michigan Court of Appeals erred in deciding that he was not denied his right to present a defense.  Certainly, the defendant in a criminal case has the

9

right to present his own witnesses to establish a defense.  *See Crane v. Kentucky,* 476 U.S. 683, 690

(1986).  Nonetheless,

> [a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions. *See Taylor v. Illinois*, 484 U.S. 400, 410, 108 S.Ct. 646, 653–654, 98 L.Ed.2d 798 (1988); *Rock v. Arkansas*, 483 U.S. 44, 55, 107 S.Ct. 2704, 2711, 97 L.Ed.2d 37 (1987); *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1045–1046, 35 L.Ed.2d 297 (1973). A defendant's interest in presenting such evidence may thus "'bow to accommodate other legitimate interests in the criminal trial process.'" *Rock, supra*, at 55, 107 S.Ct., at 2711 (quoting *Chambers, supra*, at 295, 93 S.Ct., at 1046); accord, *Michigan v. Lucas*, 500 U.S. 145, 149, 111 S.Ct. 1743, 1746, 114 L.Ed.2d 205 (1991). As a result, state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not "arbitrary" or "disproportionate to the purposes they are designed to serve." *Rock, supra*, at 56, 107 S.Ct., at 2711; accord, *Lucas, supra*, at 151, 111 S.Ct., at 1747.

*United States v. Scheffer*, 523 U.S. 303, 308 (1998) (footnote omitted).  Therefore, it is not enough

for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful

defense evidence was erroneous.  Instead, a habeas petitioner must show that the state trial court's

decision to exclude the evidence was "an objectively unreasonable application of clearly established

Supreme Court precedent." *See Rockwell v. Yukins,* 341 F.3d 507, 511-12 (6th Cir. 2003).

A federal habeas court will not disturb a state court's exclusion of evidence on

relevancy grounds "unless the relevance and probative value of such evidence is so apparent and

great that excluding the evidence denies the petitioner the due process of law." *Jones v. Smith,* 244

F. Supp. 2d 801, 814 (E.D. Mich. 2003) (citations omitted).  "The inquiry in reviewing a claim of

improper exclusion of evidence is whether the evidence was rationally connected to the crime

charged and[] if its exclusion was so prejudicial as to deprive the defendant of a fundamentally fair

trial." *Id.*

At trial, petitioner wanted to call his brother to testify about his brother's personal beliefs regarding petitioner's reliability while high on crack cocaine and regarding petitioner's capacity for violence. The trial court judge excluded the testimony on the grounds that the information was not relevant to whether petitioner choked the victim. The trial court's decision to preclude defense counsel from calling petitioner's brother as a defense witness did not violate petitioner's right to confrontation or due process because the evidence was, at best, only remotely relevant. "Although . . . the Confrontation Clause places meaningful limits on a trial judge's ability to exclude evidence under a state's rules of evidence, those limits are not relevant when the information in question has virtually no probative value." *See Farley v. Lafler,* 193 F. App'x 543, 547 (6th Cir. 2006).

Petitioner also challenges the trial court's exclusion of evidence regarding a December 16, 2008 destruction of property report at VanKlaveren's apartment. In excluding this evidence, the trial judge ruled that the contents of the police report, related to observations made at the scene of a crime while investigating the crime, were inadmissible hearsay and that the testimony regarding the incident would be based on facts not in evidence. Evidence that is deemed insufficiently unreliable, such as hearsay evidence, is excludable even if it may be relevant to the defense. *See McCullough v. Stegall,* 17 F. App'x 292, 295 (6th Cir. 2001); *Allen v. Hawley,* 74 F. App'x 457, 462-63 (6th Cir. 2003). Moreover, the trial court judge permitted petitioner to make reference to the incident and to argue in closing that someone else had a motive to murder the victim. As such, the exclusion of the police reports did not preclude petitioner from presenting his defense.          Petitioner next challenges the trial court's ruling denying him additional time

11

to review the fingerprint cards and photographs of VanKlaveren's apartment.   In criminal proceedings,

"[d]enial of a continuance rises to the level of a constitutional violation only when there is an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." *Burton v. Renico*, 391 F.3d 764, 772 (6th Cir. 2004) (internal quotation marks and citations omitted).   To obtain relief, a habeas petitioner must "show that the denial of a continuance actually prejudiced his or her defense." *Id.*

In the present case, petitioner has not shown that he was prejudiced by the trial court's refusal to grant a continuance to permit him additional time to review printed copies of the fingerprint cards and photographs of VanKlaveren's apartment.   Defense counsel had digital copies of all of the photographs before trial and was familiar with the images.   Defense counsel had the ability to introduce any photographs requested at trial and was able to effectively cross-examine the witness.   Petitioner has failed to show that he was prejudiced by the trial court's refusal to grant a continuance.

Petitioner next challenges the trial court's ruling limiting his questions on re-cross examination to matters testified to on direct examination, thereby excluding questions pertaining to the victims's fingernails which were outside the scope of the re-cross examination.   A criminal defendant has a Sixth Amendment right to re-cross-examination only if such questioning attends a new matter elicited for the first time by the prosecutor on redirect examination.   *See O'Brien v. Dubois*, 145 F.3d 16, 26 (1st Cir. 1998).   Defense counsel's questions to the detective about DNA testing of VanKlaveren's fingernails were outside the scope of re-cross examination.   *See Thomas*, 2011 WL 192384, at *4.   The Michigan Court of Appeals' decision on this issue is not contrary to

12

Supreme Court precedent.

Petitioner further argues that the trial court unfairly prevented the jury from hearing about discovery issues pertaining to the lack of gathering and preserving evidence during the initial investigation and prior to trial and argues that he was denied the right to present a defense when his counsel was precluded from mentioning the discovery problems leading up to the trial in his closing argument.   The Supreme Court has held that "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).  The Michigan Court of Appeals rejected petitioner's argument on the grounds that "[t]he trial court properly limited the information to which the jurors were exposed in order to ensure that the jurors' ability to make an impartial decision was not impaired." *Thomas,* 2011 WL 192384 at *4 (footnote omitted).  The Michigan Court of Appeals decision on this issue was not contrary to Supreme Court precedent.

For the reasons stated above, the Court concludes that petitioner is not entitled to habeas relief on his second claim.

### C.  Claim 3:  Cumulative Error Claim

In his third claim, petitioner contends that he is entitled to habeas relief because of cumulative error.  This claim is denied because "not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief." *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005).

### D.  Claims 4, 5 and 6:  Ineffective Assistance Claims

Petitioner contends that his trial and appellate attorneys were ineffective for various reasons.  To show that he was denied the effective assistance of counsel, petitioner "must show ... that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment [and that] . . . the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Further, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."  *Id.* at  689.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  Finally, on habeas review "the question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (internal quotation marks omitted).

Petitioner argues that defense counsel advised him to plead guilty to two unrelated felonies, which led petition not to testify at trial.  The Michigan Court of Appeals permissibly found there was no evidence presented to support this claim.  *Thomas*, 2011 WL 192384, at *5.  The court of appeals' decision on this issue does not violate Supreme Court precedent.

Petitioner next argues that defense counsel failed to adequately review photographs and fingerprint evidence before trial.  The Michigan Court of Appeals rejected this argument on the

14

grounds that "[t]rial counsel was familiar with the fingerprint evidence and the photographs and was able to cross-examine relevant witnesses with the evidence and photographs during trial." *Id.* The court of appeals did not violate Supreme Court precedent in concluding that petitioner failed to show prejudice.

Petitioner next argues that trial counsel was ineffective by failing to investigate the possibility of suppressing evidence. The Michigan Court of Appeals addressed this issue as follows:

> Thomas also argues that trial counsel was deficient because he failed to review and investigate the possibility of suppressing evidence gathered from VanKlaveren's apartment. The trial record does not conclusively establish whether police ever obtained a warrant for the search; thus, Thomas's claim that there was a possible suppression issue has merit. However, even if the police did not have a warrant, the initial search of the apartment was justified under the emergency-aid exception, which permits police investigating a situation to enter a residence without a warrant when police "reasonably believe someone is in need of immediate aid[.]" The emergency-aid exception permitted officers to seize the body of VanKlaveren and any other evidence in plain view. The primary evidence against Thomas was the evidence obtained from the autopsy of VanKlaveren's body regarding her injuries and cause of death. Thus, even if there was no warrant obtained, the evidence that strongly linked Thomas to VanKlaveren's murder fell within an exception to the warrant requirement and would not have been suppressed. Thomas has not established that he was prejudiced as a result of any deficiency by his counsel. Thus, Thomas has not met his burden to establish that trial counsel was ineffective.

*Thomas*, 2011 WL 192384, at *6 (footnotes omitted). The court of appeals did not violate any Supreme Court precedent in rejecting this claim, as petitioner has failed to show that his Fourth Amendment claim is meritorious. Under the "emergency aid exception" to the warrant requirement, the police were permitted to enter the residence and counsel was not ineffective for failing to file a motion to suppress.

Petitioner next argues that trial counsel was ineffective by failing to request any relief in a post-trial motion. The Michigan Court of Appeals addressed this argument as follows:

> Thomas argues that trial counsel was deficient because counsel failed to request any relief in a post-trial motion. We disagree. After trial, Thomas filed "Additional Trial Objections," which were merely a reiteration of objections already addressed during trial. "Trial counsel is not required to advocate a meritless position," and the post-trial objections did not contain any position that warranted a request for relief.

*Id.* Petitioner has not offered, either to the Michigan courts or to this Court, any evidence beyond his own assertions as to why his attorney was ineffective for failing to pursue objections already raised and addressed during trial. This claim is meritless, as the Michigan Court of Appeals found.

Petitioner next argues that his appellate counsel was ineffective for failing to raise these ineffective assistance of trial counsel claims. This claim fails because, as noted above, petitioner has failed to identify a single instance of ineffectiveness by his trial attorney. There was, in short, no appellate issue to be raised as to trial counsel's effectiveness.

Finally, petitioner argues that his trial counsel was ineffective for rendering incompetent advice during the plea bargaining process (Claim 5) and that he should be allowed to avail himself of the plea offer now (Claim 6). These interrelated claims are unexhasted and have been defaulted because they were raised either for first time in petitioner's post-conviction appeal before the Michigan Supreme Court (*see* Dkt. # 9-27, Pg ID 1503-1504) or before this Court as a new argument pertaining to the rejection of a plea offer. Petitioner reiterates the legal argument raised for the first time at the Michigan Supreme Court, but appears to be raising a new claim before this Court pertaining to rejection of the plea offer.

16

As a general rule, a state prisoner seeking federal habeas relief must first exhaust his available state court remedies before raising a claim in federal court. *See* 28 U.S.C. § 2254(b) and (c); *Picard v. Connor*, 404 U. S. 270, 275-78 (1971). "Although the exhaustion doctrine is not a jurisdictional matter, it is a threshold question that must be resolved before we reach the merits of any claim." *Wagner v. Smith*, 581 F.3d 410, 415 (6th Cir. 2009) (citation omitted).

Raising a claim for the first time before the state courts on discretionary review does not amount to a "fair presentation" of the claim to the state courts for exhaustion purposes. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989). Because petitioner failed to present his fifth and sixth claims in his appeal with the Michigan Court of Appeals, his subsequent presentation of this claim to the Michigan Supreme Court on post-conviction review did not satisfy the exhaustion requirement for habeas purposes. *See Warlick v. Romanowski,* 367 F. App'x 634, 643 (6th Cir. 2010).

Petitioner has therefore failed to exhaust his fifth and sixth claims with the state courts. Petitioner argues that he should be excused from raising his claim earlier in his post-conviction motion or in his post-conviction appeal before the Michigan Court of Appeals because his claim was based on a new rule of law enunciated by the United States in the cases of *Missouri v. Frye,* 132 S. Ct. 1399 (2012), and *Lafler v. Cooper,* 132 S. Ct. 1376 (2012), both of which were unavailable until petitioner filed his post-conviction application for leave to appeal to the Michigan Supreme Court.

The Supreme Court cases of *Frye* and *Lafler* did not announce new rules of constitutional law that would excuse petitioner's failure to raise this claim earlier. *See In re Liddell*, 722 F.3d 737, 738 (6th Cir. 2013) (holding that *Frye* and *Cooper* did not announce a new rule of constitutional law that would permit defendant to file a successive motion to vacate sentence).

Petitioner has therefore failed to demonstrate any reason to excuse the procedural default of his fifth or sixth claims.  As cause for the failure is absent, the Court need not reach the prejudice issue regarding these claims.  Additionally, petitioner has not presented any new, reliable evidence to support any assertion of innocence that would allow the Court to consider petitioner's unexhausted claims in spite of the procedural default.

## IV.  Conclusion

For the reasons stated above, the Court hereby denies petitioner's application for a writ of habeas corpus.  The Court shall also deny a certificate of appealability, as petitioner has not made a substantial showing of the denial of a constitutional right, as required under 28 U.S.C. § 2253(c)(2).  Nor may petitioner proceed on appeal in forma pauperis, as any appeal in this matter would be frivolous.  Accordingly,

IT IS ORDERED that petitioner's application for a writ of habeas corpus is denied.


IT IS FURTHER ORDERED that no certificate of appealability shall issue.

IT IS FURTHER ORDERED that petitioner may not proceed on appeal in forma pauperis.


s/Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated: February 1, 2017
        Detroit, Michigan


18

I hereby certify, that on February 1, 2017, I served the
foregoing document on all parties using the ECF system
or U.S. Mail.

s/Teresa McGovern
Deputy Clerk